**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

DAVID HUESTON

            v.

UNITED STATES OF AMERICA

CAUSE NO.: 1:21-CR-37-HAB
1:25-CV-01-HAB

**OPINION AND ORDER**

Petitioner David Hueston ("Hueston") entered into a conditional plea of guilty to armed drug trafficking charges. (ECF Nos. 47, 51). As part of his plea agreement, he retained the right to appeal this Court's denial of his motion to suppress. (Plea Agreement, ECF No. 44, ¶ 6). On appeal, the Seventh Circuit affirmed this Court's ruling denying the motion to suppress. (ECF No. 92). Following that ruling, Hueston timely filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255 (ECF No. 110).[1] The motion is fully briefed and ripe for consideration. Because Hueston has not successfully asserted any ground upon which vacating his conviction is appropriate, the motion will be DENIED as will a certificate of appealability.

**DISCUSSION**

I.    **Factual and Procedural Background**

---

[1] While the briefing on his § 2255 motion played out, Hueston filed numerous other motions and letters, including: a motion to appoint counsel (ECF No. 112); a motion for recusal (ECF No. 113); a motion to reconsider the recusal denial (ECF No. 120); motion to expand the record and to expand initial brief (ECF Nos. 122, 123); a motion for court orders due to interference and denial of access (ECF No. 128); motion for evidentiary hearing or further proceedings (ECF No. 132), supplement to reply (ECF No. 130), letter requesting a status hearing (ECF No. 136); letter requersting evidentiary hearing or relevant proceedings (ECF No. 138); and, a letter titled "request for ruling or proceedings" (ECF No. 139). Following Defendant's last request, the Court issued a text only entry indicating that it anticipated a ruling on the Defendant's petition within 60 days. After this entry, Hueston filed another letter/supplement. (ECF No. 142). This order resolves all remaining pending motions.

The parties, this Court, and the Seventh Circuit are all well-versed in the facts underlying this case. For simplicity, the Court adopts the factual record the Seventh Circuit identified in Hueston's appeal and includes that record below:

### A. Investigation

In February 2021, a tipster reported to a Grant County, Indiana Sheriff's Deputy that David Hueston was dealing drugs. That deputy passed the information along to the Joint Effort Against Narcotics ("JEAN") Team Drug Task Force. A few days later, Detectives Michael Ross and Leland Smith, members of the JEAN Team and Marion, Indiana police officers, met with the tipster.

In a partially recorded conversation, the tipster explained that he wanted to break his methamphetamine addiction by turning in his dealer, Hueston, to police. He told detectives he had been buying drugs from Hueston for a few months. In fact, he had been in Hueston's apartment three or four days earlier and seen a softball-sized bag of heroin and three pounds of methamphetamine. He also reported that Hueston had guns "just laying around."

After showing the detectives Hueston's picture, the tipster rode with them to the duplex in Marion where he claimed Hueston lived. He identified the front door of the building, explaining that the building had only two interior doors, one leading to the downstairs apartment and another leading to Hueston's apartment upstairs. A green Mini Cooper was parked outside the duplex, which the tipster said Hueston owned.

At some point that day, Detective Ross retrieved the tipster's records in the local Grant County database and found an arrest for theft in 2015. Sometime after Hueston's arrest, Detective Ross ran a full background check on the tipster and discovered convictions for theft and domestic battery, as well as misdemeanor arrests.

The day after meeting the tipster, the detectives began electronic and in-person surveillance of Hueston's apartment. A pole camera recorded the back of the duplex throughout the day; the detectives conducted visual surveillance of the front entrance during the afternoon and evening hours with a brief break for dinner. The detectives observed about 30 people enter the building during this time. A few cars also came and went, including the Mini Cooper, which was driven by a woman. After running the plates on that Mini Cooper, the detectives discovered they belonged on a 2012 Hyundai owned by a woman.

That evening, the detectives attempted to apprehend a blue car that had parked for a few minutes near Hueston's apartment; the detectives believed the car's occupants had gone into Hueston's apartment. After an unsuccessful attempt to stop the car, Detectives Ross and Smith returned to the stakeout.

Later that night, a man parked a black truck outside the building and entered the duplex. Although the detectives did not see him enter the interior door to Hueston's apartment, Detective Smith could see the only other interior door leading to the downstairs apartment, which he did not use. They inferred, then, that the man must have gone to Hueston's apartment. When the driver returned to the truck and

2

drove away, a Grant County Sheriff's Deputy pulled him over for a traffic violation and found methamphetamine, other drugs, and a scale. Sometime later—it is not clear when—that man was identified as a known drug dealer.

### B. Affidavit and Search Warrant

After the discovery of drugs in the black pickup truck, Detective Smith continued surveillance on Hueston's apartment and Detective Ross left to draft an affidavit in support of a search warrant for the apartment. Detective Ross discussed the case with a local prosecutor, drafted the affidavit, and received the prosecutor's approval on the written affidavit before submitting it to the issuing judge.

The affidavit included no information about the tipster other than noting the receipt of his initial tip; it did not indicate that the tipster's identity was known to police or that he had met with detectives who recorded their conversation.[1] It did not mention the tipster's drug addiction or arrest history known to Detective Ross at the time. Although it stated that the detectives had been told Hueston had drugs and guns in his apartment, it did not indicate the tipster had firsthand knowledge of this information. The affidavit included the tip about the Mini Cooper but did not disclose that the detectives only observed a woman driving the car or that it was not registered to Hueston. It also incorrectly stated that the driver of the black truck "was observed walking out of the residence," even though the detectives did not specifically observe him enter or exit the interior door leading to Hueston's apartment.

The affidavit included other details gleaned from the investigation, including foot and vehicle traffic and the contents of the black pickup truck, which tests revealed to be methamphetamine, opiates (including fentanyl), and marijuana.

Based on the affidavit, an Indiana Superior Court magistrate judge issued a search warrant for Hueston's apartment, which the detectives executed later that night. They found Hueston in the apartment, as well as thousands of dollars in cash, methamphetamine, heroin, fentanyl, and a handgun and ammunition.

*United States v. Hueston,* 90 F.4th 897, 899–901 (7th Cir.), *cert. denied,* 144 S. Ct. 2549, 219 L. Ed. 2d 1215 (2024).

The procedural history was also laid out by the Seventh Circuit as follows:

In April 2021, Hueston was indicted in the Northern District of Indiana for possession with intent to distribute 50 grams or more of methamphetamine and 100 grams or more of heroin, possessing a firearm in furtherance of those drug trafficking crimes, and being a felon in possession of a firearm. In September of that year, Hueston moved to suppress the evidence seized from his apartment because the supporting affidavit did not establish probable cause. Hueston also filed a motion for a *Franks* hearing. The district court granted his request for a hearing, finding the affidavit and its alleged omissions "troubling."

At the hearing, both Detective Ross and Detective Smith testified before the district court judge, answering questions on direct and cross-examination about

3

> their interactions with the tipster, the information they gathered while conducting surveillance on Hueston's apartment, and the information contained within and excluded from the affidavit. After the hearing, the district court concluded that the detectives' testimony was credible and found no reckless or deliberate disregard for the truth, despite identifying multiple omissions and one misstatement in the affidavit. The district court found that most of the omissions were immaterial, and some would have actually bolstered probable cause, indicating a lack of deliberate intent to mislead the issuing judge.
>
> Although the court expressed some doubt about whether the affidavit supported probable cause, it ultimately concluded that it need not answer that question because the good-faith exception to the exclusionary rule applied.
>
> After the district court denied his motion to suppress, Hueston pled guilty and expressly reserved his right to appeal the court's suppression order.

*Id.* at 901.

On appeal, Hueston argued that this Court erred in finding that there was no *Franks* violation and that the good-faith exception to the exclusionary rule applied. The Seventh Circuit disagreed with Hueston that a *Franks* violation occurred finding, "the affidavit's misstatements and omissions were unwise—even sloppy—but the evidence in the record does not unequivocally show the detectives, including Detective Ross as the author of the affidavit, intended to mislead the issuing judge." *Hueston*, 90 F.4th at 901. As for this court's reliance on the exclusionary rule, the Seventh Circuit determined:

> Hueston has failed to present evidence that the issuing judge was not acting in a neutral and detached way. Nor can Hueston overcome the presumption of good faith by showing dishonesty or recklessness since we have already concluded that Detective Ross did not commit a *Franks* violation. And the affidavit's deficiencies were not so egregious as to alert any reasonable officer to any lack of probable cause, particularly in light of the detective's consultation with the prosecutor before and after drafting the affidavit.

*Id.* at 904. Accordingly, the Seventh Circuit affirmed the denial of Hueston's Motion to Suppress.

**II.     The Section 2255 Petition**

    **a.  Legal Standard**

Under 28 U.S.C. § 2255, a prisoner in custody pursuant to a federal sentence may move to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. In other words, to obtain relief under § 2255, Hueston must show that the error asserted is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997) (cleaned up).[4]

### b. Hueston's §2255 Claims that are Procedurally Defaulted

In his petition to vacate, Hueston raises numerous arguments – most of which are procedurally defaulted. Relief under 28 U.S.C. § 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). To succeed on a motion under § 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence exceeded the maximum authorized by law or is otherwise subject to collateral attack. *Id.* Because a § 2255 motion "is not a substitute for a direct appeal." *Barnickel*, 113 F.3d at 706, a petitioner cannot raise in a § 2255 motion:

(1) issues that were raised on direct appeal, absent a showing of changed circumstances;

(2) nonconstitutional issues that could have been but were not raised on direct appeal; and

(3) constitutional issues that were not raised on direct appeal.

*Id.* Arguments falling within these categories are procedurally defaulted. Still, a § 2255 movant can overcome procedural default in one of two ways: by showing "cause" for the default and "actual prejudice" from failing to raise errors on direct appeal, or by demonstrating that the district

court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008).

The meat and potatoes of Hueston's petition seeks to reargue both issues raised on appeal: whether a *Franks* violation occurred and whether the exclusionary rule was properly applied. Absent a change of circumstances or evidence that the failure to reconsider the claims would cause a fundamental miscarriage of justice, both these issues are procedurally defaulted. Hueston has shown neither and thus, these issues are considered defaulted and dismissed.

Next, Hueston argues that the Court must have been biased and the undersigned should have recused herself. He also asserts that the Government engaged in prosecutorial misconduct when they presented Det. Ross's perjured testimony at the *Franks* hearing. These claims are predicated on Hueston's belief that the detectives were untruthful during the *Franks* hearing and presumably that the Government knew of the perjury and that the Court credited it. But these claims relate to the *Franks* hearing and the suppression proceedings and so they could have been raised on direct appeal. Because they were not, Hueston is now procedurally defaulted from raising them.[2] These grounds are dismissed.

Third, Hueston argues that the Court made two sentencing errors. But this claim is procedurally barred by the collateral attack waiver in his plea agreement. (Plea Agreement, ECF No. 44, ¶8(d)). Except for claims of ineffective assistance of counsel, Hueston waived his right to appeal or challenge his conviction or sentence or the manner in which it was imposed in any §2255 proceeding.

---

[2] These issues were also not preserved for appeal in the trial court. Hueston did not seek recusal of the undersigned until after the denial of his appeal nor did he raise the issue of prosecutorial misconduct before the trial court.

"A defendant may waive his right to challenge his sentence on collateral review through a plea agreement." *Plunkett v. Sproul*, 16 F.4th 248, 253 (7th Cir. 2021). Such a waiver is "generally enforce[able] ... if its terms are express and unambiguous and the record shows that it was knowing and voluntary." *United States v. Bridgewater*, 995 F.3d 591, 595 (7th Cir. 2021). "A change in the law after a defendant pleads guilty does not change the voluntariness of the plea at the time it was entered." *Grzegorczyk v. United States*, 997 F.3d 743, 748 (7th Cir. 2021). Indeed, "abundant case law" holds that appeal waivers do not lose their effect just because "the law changes in favor of the defendant after sentencing," *United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005), and "there is no principled means of distinguishing a § 2255 waiver from a waiver of appeal rights," *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999).[3]

Hueston knowingly and voluntarily entered into the plea agreement that included the collateral attack waiver, as confirmed by his signature of the plea agreement (ECF No. 44), and the transcript of his plea hearing (ECF No. 88). Because Hueston's plea agreement included a waiver of his right to challenge his conviction and sentence in most circumstances, he has waived the right to pursue due process claims in his § 2255 motion. Thus, this claim is dismissed.

The remainder of Hueston's petition asserts ineffective assistance of counsel by both trial and appellate counsel.  A claim for ineffective assistance of counsel ("IAC") is not subject to the general procedural default rules. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Such claims may be brought through a § 2255 motion even if not pursued on direct appeal. *Id.* Accordingly, the Court shall consider the merits of this argument below.

---

[3] One of the sentencing issues Hueston raises relates to his career offender designation.The Seventh Circuit has enforced collateral-attack and appeal waivers against challenges to career offender designations, even though the defendant may have failed to "anticipate subsequent legal developments" at the time he entered into the plea agreement. *United States v. McGraw*, 571 F.3d 624, 631 (7th Cir. 2009); *see Plunkett*, 16 F.4th at 253-54; *Oliver v. United States*, 951 F.3d 841, 845-46 (7th Cir. 2020); *United States v. Crockett*, No. 20-3025, 2023 WL 3497875, at *4 (7th Cir. May 17, 2023).

### c.  Ineffective Assistance Standard

The Sixth Amendment to the U.S. Constitution grants criminal defendants the right to the effective assistance of counsel. *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009) (citing *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009)). In adjudicating claims of ineffective assistance of counsel, district courts employ the two-prong *Strickland* test. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984); *Wyatt*, 574 F.3d at 457-58. For such a claim to prevail, Petitioner must prove his counsel's performance fell below an objective standard of reasonableness or, put another way, was "objectively deficient," and caused prejudice. *Wyatt*, 574 F.3d at 457-58; *Galbraith v. U.S.*, 313 F.3d 1001, 1008 (7th Cir. 2002). "Both components of the test must be satisfied; 'the lack of either is fatal.'" *Clay v. U.S.*, 311 F. Supp. 3d 911, 918 (N.D. Ill. 2018) (quoting *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996)).

For the performance prong, the defendant "must direct us to the specific acts or omissions which form the basis of his claim." *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). "The court must then determine whether, in light of all the circumstances, the alleged acts or omissions were outside the wide range of professionally competent assistance." *Id.* Claims that an attorney was ineffective necessarily involve inquiries into an attorney's trial strategies. These trial determinations, like so many "other decisions that an attorney must make in the course of representation[, are] a matter of professional judgment." *United States v. Berkowitz*, 927 F.2d 1376, 1382 (7th Cir. 1991). To resist the natural temptation to play "[m]onday morning quarterback," *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990), the Court "must defer to any strategic decision the lawyer made that falls within the wide range of reasonable professional assistance, even if that strategy was ultimately unsuccessful." *Shaw v. Wilson*, 721 F.3d 908, 914 (7th Cir. 2013).

Should the petitioner satisfy the performance prong, he must then fulfill the prejudice prong by demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *United States v. Starnes*, 14 F.3d 1207, 1209–10 (7th Cir. 1994). "In making the determination whether the specified errors resulted in the required prejudice, a court should presume...that the judge or jury acted according to law." *Strickland*, 466 U.S. at 694. Even though isolated errors can sometimes be considered ineffective assistance, "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Karr v. Sevier*, 29 F.4th 873, 880 (7th Cir. 2022). And mere "[f]ailure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 196).

### 1. Trial Counsel's performance did not run afoul the Sixth Amendment nor was Defendant prejudiced by the alleged performance issues.

Hueston sets out pages of what he contends are discrepancies in Det. Ross' testimony at the *Franks* hearing and argues that counsel was ineffective by failing to point out these discrepancies and impeach Det. Ross. But this is not reflected in the record. Counsel identified nearly every discrepancy Hueston raises in either her arguments to the court, in briefing, or on cross-examination during the *Franks* hearing. *Resnick v. United States,* 7 F.4th 611, 622 (7th Cir. 2021) (counsel not ineffective when counsel *did* seek to admit the supposed impeachment evidence). Here, counsel did all she could to point out discrepancies in the affidavit and in Det. Ross's testimony to the Court – and, in many instances she succeeded. The Court granted Hueston a *Franks* hearing based on the discrepancies, misstatements, and omissions in the affidavit. At the evidentiary hearing on the *Franks* motion, the Court observed counsel engaged in vigorous cross-examination, emphasizing many of the discrepancies Hueston raises. At the end of the day, Hueston's objections are not primarily with counsel's representation as much as they are with the

conclusions that this Court and the Court of Appeals drew from the evidence. Simply put, counsel provided vigorous cross-examination of Det. Ross and identified in her filings particular statements and evidence that undercut Det. Ross's credibility. That is all that is required of counsel to satisfy the performance prong. Hueston has not shown that his attorney's performance "fell below an objective standard of reasonableness" as measured against "prevailing professional norms." *Strickland,* 466 U.S. at 688.

As for prejudice, both this Court and the Seventh Circuit acknowledged that there were omissions and misstatements in the affidavit giving rise to the warrant. But even if the Court could find some deficient performance of trial counsel by not cross-examining, impeaching, or otherwise casting even more doubt on Det. Ross' credibility, Hueston cannot establish that he received ineffective assistance of counsel because he fails to demonstrate that there is a reasonable probability the outcome of the *Franks* hearing would have been different. Both this Court and the Seventh Circuit engaged in a thorough examination of the facts in the affidavit and the testimony. This Court found that although there were problems with the affidavit as identified by counsel during the *Franks* hearing, Hueston did not establish the prerequisites for a *Franks* violation. *Strickland*, 466 U.S. at 693 ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."). Hueston has not established that the outcome would have been different but for the issues he raises with counsel's performance.

### 2. Appellate Counsel's performance did not run afoul the Sixth Amendment nor was Defendant prejudiced by the alleged performance issues.

Finally, Hueston raises ineffective assistance of counsel claims against his appellate counsel. To meet the performance element of *Strickland*, Hueston must establish that "appellate counsel failed to raise an issue that was both obvious and clearly stronger than the issues he did raise." *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). "[C]ounsel is not required to raise every

nonfrivolous issue on appeal." *Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010). And to meet the prejudice element, Hueston "must show that there is a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised." *Id.*

As noted above, on appeal Hueston raised two issues related to the motion to suppress – the district finding that no *Franks* violation occurred and the application of the good-faith exception. In his petition, Hueston asserts that appellate counsel should have argued more vigorously about the credibility of Det. Ross' testimony. Although appellate counsel reiterated the points raised by trial counsel before this Court in both his briefs and during oral argument, Hueston believes that appellate counsel should have emphasized, among other things, that: (1) the tipster was a paid CI; (2) the tipster had a drug and criminal history; (3) detectives showed the tipster Hueston's photo; (4) Det. Ross never saw Hueston driving the Mini Cooper; and (5) the Mini Cooper was not registered to Hueston.

Again, however, appellate counsel raised all the points that Hueston references. Appellate counsel filed over 75 pages of briefing and engaged in robust argument before the Seventh Circuit in which he addressed the credibility of Det. Ross. The Seventh Circuit disagreed with Hueston's position and affirmed the district court. The fact that counsel's arguments did not result in a favorable outcome is not a basis for finding that counsel's substantial efforts to obtain one constituted ineffective assistance.

Hueston also references that appellate counsel refused to raise claims of bias by the district judge. But he identifies no facts that would support such a claim. Additionally, Hueston did not raise the issue in the trial court or seek recusal of the undersigned until after his appeal concluded. If Hueston wanted counsel to make an argument that had no merit, an ineffective-assistance claim

cannot succeed because "[c]ounsel is not ineffective for failing to raise meritless claims." *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013); *see also Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel."). Hueston has not shown that appellate counsel failed to raise an issue that was both obvious and clearly stronger than the issues he did raise. Hueston's assertion that appellate counsel was ineffective fails.[4]

### 3. Summary

In sum, Hueston's only available grounds for relief in his petition are based on the ineffective assistance of counsel. However, as set forth above, trial and appellate counsel were not ineffective when they actually raised most, if not all, the arguments identified by Hueston, or by declining to raise arguments that they believed in their professional judgment were not merited. Hueston disagrees with the outcome of both the district court and Seventh Circuit proceedings. That much is clear in the record. What is not in this record is facts supporting a conclusion that Hueston's trial or appellate counsel were ineffective at any time. His Motion to Vacate, Set Aside, or Correct Sentence is DENIED.

### CERTIFICATE OF APPEALABILITY

Because Hueston has not established a valid claim for relief, his motion under 28 U.S.C. § 2255 must be denied. However, under Rule 11 of the Rules Governing Section 2255 cases, the court must also issue or deny a certificate of appealability when entering a final order adverse to a movant. A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), meaning that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]"

---

[4] The Court need not consider prejudice because Hueston has not demonstrated deficient performance.

12

*Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000)). For all the reasons just discussed, Hueston has not made such a showing and a certificate of appealability will not issue.

## CONCLUSION

For the reasons discussed, the Court DENIES Defendant's Motion to Vacate Sentence under 28 U.S.C. § 2255 (ECF No. 110) and DECLINES to issue a certificate of appealability. The Motion for Evidentiary Hearing (ECF No. 132) is DENIED.

SO ORDERED on May 5, 2026.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT


cc:    Seventh Circuit Court of Appeals
       USCA Case No 26-1436

13